UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAWRENCE CALDWELL,<br><br>  Plaintiff,<br><br>  v.<br><br>CENTER FOR CORRECTIONAL<br>HEALTH AND POLICY STUDIES, INC.<br>*et al.*,<br>  Defendants. | Civil Action No. 03-1464 (GK/JMF) |

## MEMORANDUM OPINION

  This is a suit by a former prisoner at the D.C. Jail who complains (*inter alia*) that the Jail's delay in treating two of his teeth, numbers 3 and 19, was unjustifiable. The present discovery dispute deals with tooth number 19.

### INTRODUCTION

  Plaintiff asked Dr. Alan Berne, a dentist, to review the medical records pertaining to his treatment and Dr. Berne has produced a report, which he supplemented, expressing the opinion that the delay in dental treatment plaintiff received for tooth number 19 was inconsistent with the community standard of care for the treatment of the dental conditions about which plaintiff complained. Report of Dr. Alan Berne, Exhibit 4, to <u>Motion for Sanctions under Fed. R. Civ. P. 37(e) of Defendant The Center for Correctional Health and Policy Studies</u> (hearafter "Sanctions Motion").

  On December 11, 2003, plaintiff served interrogatories and a request to produce

documents. Interrogatory Number 11 demanded the identities of all those who had provided plaintiff with health care "during the past ten (10) up to the present day." Sanctions Motion, Exhibit 1 at 6. Request to produce Number 9 demanded copies of "all medical records for all doctors, dentists . . . for any medical treatment you underwent in the ten (10) years preceding the incident which is the subject of this lawsuit to the present." Id. at 20.

On March 25, 2004, plaintiff objected to the over breadth of interrogatory, but indicated that he would "produce documents regarding the injuries alleged in the complaint that identify the health care providers from whom he has received treatment that is potentially relevant to the issues in the case." Id. at 11. As to the request to produce documents, plaintiff's counsel stated that plaintiff would produce "all medical records in his possession . . . that relate to the injuires or conditions alleged in the complaint." Id. at 20.[1]

On March 6, 2004, plaintiff visited Dr. Berne's office, had his teeth cleaned, and was examined by Dr. Berne. This visit generated a record. Id., Exhibit 6. In the section of the record entitled "Patient Medical-Dental History," plaintiff wrote that "[tooth]#19 [was] very sensitive." Id. In addition, in response to a written question asking whether any part of his mouth was "sore to pressures or irritants (cold, sweets, etc.)," plaintiff wrote "#19." Id.

On March 10, 2004, Dr. Berne completed the expert report to which I referred earlier and noted that among the "Materials and Facts Considered" were "x-rays and an evaluation of Mr. Caldwell's teeth from May 6, 2004." Dr. Berne did not specifically indicate that those x-rays were taken during plaintiff's visit to him on May 6, 2004 and did not otherwise specifically

---

[1] Note that plaintiff also committed himself by signing release authorizations for the documents not already in his possession. Id.

mention that visit.

On March 17, 2005, defendant's counsel took Dr. Berne's deposition and received from plaintiff's counsel the record generated during plaintiff's March 6, 2004 visit. Defendant's counsel then complained in a letter to plaintiff's counsel that he had been "sandbagged" by not getting the records of plaintiff's March 6, 2004 visit to Dr. Berne March 6, 2004 until the deposition. Id. Exhibit 10. According to defendant's counsel, because Dr. Berne was a "treating health care provider," the record of the visit should have been produced much earlier in response to his demand for the records of all persons who had treated plaintiff in the past ten years up to the present.

This complaint has now become the motion pending before me. In the motion, defendant's counsel accuses opposing counsel of intentionally withholding the record of the March 6, 2004 visit when he should have produced the record in March of 2004, in supplementation of plaintiff's response to the interrogatories and request to produce documents. As a result, defendant seeks sanctions, including dismissal of plaintiff's case.

## DISCUSSION

As just explained, plaintiff responded to interrogatory 11 and request number 9 by defining what he would produce as opposed to only objecting to the interrogatory and request to produce and awaiting a motion to compel or seeking a protective order. As to the interrogatory, he said he would produce documents that were "potentially relevant" and as to the request to produce, he said he would produce the records in his possession that relate to the injuries and conditions alleged in the complaint.

The problem is that plaintiff's counsel substituted *his* definition of what is discoverable,

"potentially relevant," and "relating to the injuries and conditions alleged in the complaint," for the discovery standard as stated by the Federal Rules of Civil Procedure, i.e., information is discoverable if it is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

The sea change created by the amendment to Rule 26(b)(1) was to expand discovery from information that is in fact relevant to a claim or defense to information that may not, in itself, be relevant but is readily calculated to lead to the discovery of information that is. The question then is not whether, in hindsight, the information that was not produced is, in fact, relevant to a claim or defense or even "potentially relevant" but whether, at the time it was sought, there was a reasonable likelihood the information might yield such relevant evidence. Thus, while reasonable people may differ as to whether Dr. Berne's examination of plaintiff and the resulting record is or is not relevant to a claim or defense, reasonable people may not differ as to whether such information was reasonably likely to lead to relevant evidence.

To that end, it must be recalled that Dr. Berne premised his opinion that plaintiff had not received appropriate care as to tooth number 19 entirely (and understandably) on the records generated during plaintiff's incarceration. Plaintiff's visit to Dr. Berne's office on March 6, 2004 was the first and only time that Dr. Berne actually examined plaintiff. Surely, it is more likely than not that the one and only examination of plaintiff's mouth by an expert might yield evidence bearing on the validity of Dr. Berne's opinion. The opposing contention–that it is impossible for that examination to yield any potentially relevant evidence–is simply indefensible.

Since I have concluded that the record of the visit should have been produced sooner than it was, the question becomes what to do about it. Defendant characterizes the delay as

cataclysmic, seeking the ultimate sanction of dismissal.  Plaintiff insists "no harm, no foul" and points out that: (1) in his report, Dr. Berne refers to the evaluation of x-rays done on May 6, 2004, the day of plaintiff's office visit, and (2) Dr. Berne spoke of that evaluation during his deposition.  Defendant counters that, had he known of the visit and the record it generated, he would have made further inquiry about tooth number 19 during plaintiff's deposition.  Additionally, defendant contends that he would have reviewed that record with his clients, including those dentists who treated the plaintiff while he was in the hospital, and that he would have made the record available to his expert witness before he completed his report. Sanctions Motion at 5.

     During the examination of May 6, 2004, plaintiff indicated that tooth number 19 was still very sensitive and "sore" to pressure or irritants.  Defendant does not tell us what specific additional questions he would have propounded during plaintiff's deposition and it is hard to imagine what they would be.  During his deposition, defendant asked plaintiff about the pain he endured "during the year or so that [he] waited for a filling for tooth number 19." Plaintiff's Memorandum of Points and Authorities in Opposition to Motion for Sanctions under Fed. R. Civ. P. 37 of Defendant The Center for Correctional Health and Policy Studies (hereafter "Opp.") Exhibit 3 at 76.  Plaintiff indicated that he felt pain when he chewed on food but that there was not much pain when he was not chewing.  There would be pain when, as he put it, there was "[h]ot or cold" or if the tooth hit something that was hard. Id.  The only additional fact that defendant claims not to know is that on the day the deposition was taken, plaintiff told Dr. Berne (or someone on his staff) that tooth number 19 was very sensitive.  Plaintiff has now made it clear that he is seeking damages only for the pain in tooth number 19 that he endured when he

was in prison in 2003 and that "he makes no claim regarding injuries with respect to tooth number 19 "after April 3, 2003." <u>Id.</u> at 12.  Given that admission, to which plaintiff will be bound at trial, additional questions about the May 2004 visit are hard to divine.  Perhaps it may be significant that plaintiff was still complaining of tooth number #19 in May of 2004, but whatever significance that fact has for this case can be established at trial without any additional questioning of plaintiff.  Plaintiff's statement in May of 2004 speaks for itself and is an unquestionably admissible document.

As to the use of the record by defendant's client and expert witness, there is nothing stopping defendant from making the record of the May 6, 2004 visit available to his clients and expert witness.  Certainly, the latter will be allowed to supplement his or her report if necessary to allow for information in the record that he or she was unaware of.  Thus, while there may have been delay in the production of this record, its evidentiary significance at trial remains to be seen.

I fully appreciate that defendant is arguing that plaintiff's counsel behavior in itself justifies the imposition of a sanction.  However, under <u>Bonds v. District of Columbia</u>, 93 F.3d 801, 809 (D.C. Cir. 1996), the draconian remedy of dismissal can be imposed solely in the interests of deterrence and only upon a "finding of flagrant or egregious misconduct by the defendant."  In this case, plaintiff's counsel definition of his client's discovery obligation, while incorrect, simply does not rise to this level.

As to any lesser sanction, its severity must be calibrated against considerations such as the effect on the court's docket, the nature of the misconduct claimed, the harm done to the party's opponent and whether sanctions will deter similar behavior in the future. <u>Id.</u>  Since there has been no discernible effect on the court's docket and defendant has not established any harm,

the sanction could be only justified by an interest in deterrence.  Again, while plaintiff's view of his discovery obligation was incorrect, on this record I can neither conclude that plaintiff's counsel was motivated by a malicious desire to keep hidden from defendant the record of the May, 2004 visit, nor can I conclude that plaintiff's counsel used legal arguments as a "smoke screen" to deviously satisfy an improper end.  Moreover, unlike a successful motion to compel that results in the disgorgement of a document that was being improperly withheld, here the document was produced and its production cannot be attributed to the success of the motion.  In such a situation, I would consider the award of attorney fees punitive and, on this record, do not find such punishment justified.  I will therefore not impose any sanctions.

      An Order accompanies this Memorandum Opinion.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

Date: