## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LAWRENCE CALDWELL,

      **Plaintiff,**

      v.

CENTER FOR CORRECTIONAL
HEALTH AND POLICY STUDIES, INC.
*et al.*,
      **Defendants.**

**Civil Action No. 03-1464 (GK/JMF)**

## MEMORANDUM OPINION

This case was referred to me for all discovery disputes.  Currently pending and ready for resolution is <u>Plaintiff's Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 37 for Failure to Comply with the Court's Orders</u>.  For the reasons stated below, plaintiff's motion will be granted in part and denied in part.

## INTRODUCTION

Plaintiff, Lawrence Caldwell, ("plaintiff") was previously confined as a prisoner at the Central Detention Facility in the District of Columbia.  According to plaintiff, while he was an inmate, he required the medical services of The Center for Correctional Health and Policy Studies, Inc., and others ("CCHPS" or "defendants").  The basis of plaintiff's civil suit against defendants is that the dental, eye, skin cancer, and transport services provided by defendants were not adequate and that he also suffered retaliation as a result of his complaining about the quality of the care he received. <u>Amended Complaint for Monetary Damages, Declaratory Relief, and a</u>

Trial by Judge.

## DISCUSSION

I.    The Course of Discovery

On March 15, 2004, plaintiff served defendants with interrogatories, requests for

admission, and document requests. Memorandum of Law in Support of Plaintiff's Motion for

Sanctions Pursuant to Federal Rule of Civil Procedure 37 for Failure to Comply with the Court's

Orders ("Plains. Mem."), Wallach Declaration at 1.  On June 3, 2004, at a status hearing held

before Judge Kessler, discovery was stayed and the case was referred for mediation. Plains.

Mem., Exhibit 1.  By order of the same date, the court indicated that the parties were still obliged

to respond to any outstanding discovery requests, "including Defendants' identification of expert

witnesses due on June 8, 2004," but that any additional discovery was stayed. Id.  On July 30,

2004, defendants responded to plaintiff's requests for admission. Plains. Mem., Wallach

Declaration at 2.

On August 17, 2004, another status hearing was held before Judge Kessler.  By minute

entry of the same date, the court set a discovery deadline of December 1, 2004, thus lifting the

previously imposed stay. Id. at 3.  On October 28, 2004, defendants responded to the majority of

plaintiff's document requests and on December 29, 2004, defendants supplemented that

response. Id.

On January 3, 2005, I had a telephone conference call with counsel.  Following the call, I

ordered, *inter alia*, defendants to reply to any outstanding interrogatories by January 17, 2005,

and indicated that plaintiff could, by the same date, move to compel if the answers were not

received. Plains. Mem., Exhibit 3.  I also indicated that the parties would have until January 17,

2005 to schedule any remaining depositions and that plaintiff would have 7 hours to depose Dr.

Hammond and the 30(b)(6) witness and 3.5 hours for each remaining witness. Id.  On February 3,

2005, plaintiff filed the instant motion.

II.      Plaintiff's Motion

Plaintiff claims that the defendants have "willfully violated two of the Court's orders and

ignored discovery obligations under the Federal Rules of Civil Procedure to respond to

interrogatories and appear for deposition" and thus has moved for sanctions under Rule 37(b)(2)

and 37(d). Plains. Mot. at 1.  First, plaintiff claims that defendants violated the court's orders of

June 3, 2004 and January 3, 2005 by failing to respond to plaintiff's interrogatories. Plains. Mem.

at 1.  Second, plaintiff claims that defendants violated the court's order of January 3, 2005 by

failing to schedule all remaining depositions by January 17, 2005. Id.  Plaintiff therefore asks the

court to do the following: 1) enter a default judgment against defendants, 2) hold defendants in

contempt and levy a monetary sanction against them, and 3) award plaintiff its expenses and

associated attorneys fees. Plains. Mem. at 2.

III.     Legal Standard

As I noted most recently in the case of Peterson v. Hantman, 227 F.R.D. 13 (D.D.C.

2005):

> Under Federal Rule of Civil Procedure 37, a court may
> sanction a party that fails to comply with a discovery order. Fed. R.
> Civ. P. 37(b)(2).  The Federal Rules authorize a wide array of
> sanctions, including staying the proceedings pending compliance
> with a court order, taking certain facts as established, prohibiting a
> party from introducing certain matters into evidence, finding a
> party in contempt of court, and dismissing the action or any part
> thereof.  See id.  The court also has the authority to award
> reasonable expenses, including attorney's fees, caused by the
> failure to obey a court order "unless the court finds that the failure

was substantially justified or that other circumstances make an award of expenses unjust." Id.

* * *

District courts are entrusted with broad discretion regarding whether to impose sanctions under Rule 37, and the nature of the sanctions to be imposed. Bonds v. District of Columbia, 93 F.3d 801, 808 (D.C. Cir. 1996); Sturgis v. Am. Ass'n of Retired Persons, 1993 WL 518447 (D.C. Cir. 1993) (per curiam); Steffan v. Cheney, 920 F.2d 74, 75 (D.C. Cir. 1990)). However, the court's discretion is not without limits. Indeed, this Circuit has emphasized any sanctions awarded must be proportional to the underlying offense. Bonds, 93 F.3d at 808.

Id. at 16.

Relief may also be awarded by the court pursuant to Rule 37(d) of the Federal Rules of Civil Procedure, if a party fails to attend his or her own deposition, answer interrogatories, or respond to a request for inspection. Fed. R. Civ. P. 37(d).

IV.    Analysis

A.    Defendants' Failure to Attend Noticed Depositions

It is true that defendants' failed to attend noticed depositions. However, it is also true that plaintiff repeatedly noticed depositions without first conferring with defendants. As stated by plaintiff in a letter to defendants dated October 29, 2004, "As I also explained in our telephone conversation, my standard practice is to notice depositions for specific dates and then, if opposing counsel or the witness have conflicts, to adjust the dates. In the future, if I unilaterally notice a deposition for a date that is inconvenient for you or your witness, please feel free to call me and I will do my best to continue the deposition to a date that is convenient." Plains. Mem., Exhibit 4. Given that plaintiff never bothered to confer with his opponent prior to noticing a deposition, is it really that surprising that defendants were, on several occasions, unable to

4

attend?

The following charts indicates what resulted from the manner in which these lawyers

treated each other:

| Date Plaintiff Noticed Depositions | Date Plaintiff Proposed for Depositions | Date of Defendant's Response Indicating His Unavailability |
|---|---|---|
| 10/22/04 | on or after 11/1/04 | 10/28/04 |
| 11/04/04 | 11/15/04 | None |
| 11/08/04 | 11/16/04<br>11/18/04<br>11/22/04<br>11/23/04<br>11/29/04 | 11/08/04 |
| 11/17/04 | 12/01/04 - 30(b)(6) | 11/18/04 |
| 11/19/04 | 11/30/04 | 11/22/04 |

| Date Proposed by Plaintiff for Depositions | Date Plaintiff Communicated Proposed Dates | Response by defendant |
|---|---|---|
| 12/13/04<br>12/20/04 | 11/30/04 | None |
| 12/16/04<br>12/23/04<br>12/30/04 | 12/13/04 | 12/17/04 |

There are several remarkable aspects regarding these exchanges.  One lawyer would set

dates for depositions without calling his opponent to see if the dates were acceptable.  The other

lawyer would then say he was unavailable but not once did he offer alternative dates.  On some

occasions, the latter did not respond to the dates proposed by his opponent. Thus, we have the

lawyers' merry-go-round.  Nobody gets a brass ring but two months are consumed, nasty letters

fly back and forth, and nothing gets accomplished.  What is even more startling is that neither

lawyer shows any compunction about ignoring the discovery deadlines that Judge Kessler and I

set.  Instead, the deadlines are ignored and it does not occur to either lawyer to pay Judge Kessler

or me the courtesy of moving for an enlargement of time within which to complete discovery.

In my view, this waste of time is the exact of opposite of what I intended when I spoke to

the lawyers and tried to resolve the controversy that had developed.  In my naiveté, I intended for

the lawyers to work together to find dates on which all the outstanding depositions could be

taken.  This would have taken well meaning lawyers who wished to cooperate with each other an

hour.  What I got was two months of an utter failure to cooperate and the opportunity to waste the

taxpayers' money by writing this opinion which would have been unnecessary had I not had to

play hall monitor in the kindergarten.

At times the sanctioning power, whatever its legal premise, seems to assume that only

one side is at fault and should be sanctioned.  It has been my consistent experience, however, that

there is a kind of Gresham's law of incivility in discovery in which bad behavior drives out good

behavior.  Let one lawyer act like a beast and the other, affronted by this attack, will match him

tit for tat.  In such a situation, the mess that the court has to resolve is the product of the behavior

of both of them, although one of them, in classic schoolyard fashion, "started the fight."  This

case is a good example of what I mean: while defense counsel can be criticized for never

proposing alternative dates and on occasion simply ignoring plaintiff's counsel's requests,

plaintiff's counsel made his opponent's response nearly inevitable by peremptorily setting dates

for depositions without checking with his opponent first.  For the life of me, I cannot understand

why sitting in a room with their own and their witnesses' calendars could not have eliminated the

6

entire problem.

Since I am of that view, I have decided that fairness requires me to consider sanctioning both of them and to insist that they personally, rather than their clients, be required to pay whatever sanction I impose.  I appreciate that this might be viewed as revolutionary and to that end I will permit each lawyer to convince me that I lack authority to do so or that I am misreading the record and it is unfair to punish them both.  The Order accompanying this memorandum sets deadline for counsel to file pleadings addressed to those questions.

B.    Defendants' Failure to Adequately Respond to Interrogatories

Plaintiff also claims that defendants failed to adequately respond to interrogatories when they responded with one or two-word objections such as "overly broad" or "burdensome."  I, like all members of the federal judiciary, have concluded that "[a]n objection must show specifically how an interrogatory is overly broad, burdensome or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden." Chubb Integrated Sys. Ltd. v. Nat'l Bank of Washington, 103 F.R.D. 52, 59-60 (1984).  See e.g., United States ex rel. Fisher v. Network Software Assocs., 217 F.R.D. 240, 246 (D.D.C. 2003); Athridge v. Aetna Cas. & Surety Co., 184 F.R.D. 181, 191 (D.D.C. 1998).

Although the objection based on burdensomeness has been waived, plaintiff is not entitled to demand from defendants information that is neither relevant to a claim or defense nor likely to lead to information that is.  See Fed. R. Civ. P. 26(b)(1); Byrd v. Reno, No. CIV.A.96-2375, 1998 WL 429676, at * 9 (D.D.C. Feb. 12, 1998).  In addition, as much, if not all, discovery has already taken place, I am going to order that counsel meet and confer as to all interrogatories and requests to produce documents to see if they can resolve whether defendants must provide

more information than they have.  If the parties can resolve their differences, the matter will end.

If they cannot, they will first file a joint praecipe certifying that they have made a genuine effort

to resolve their differences but could not.  Plaintiff may then move to compel any additional

responses.

If such a motion and opposition is filed,  I will deem counsel to be certifying that, given

all the discovery plaintiff has already had, the additional discovery is neither cumulative nor

duplicative and that the opposition to it is truly justified by the significance of the information

sought and that the expenditure of additional judicial resources that it will take to resolve the

motion.  If I find that certification not to be true, I will sanction the offending lawyer.  If that

sounds like I have reached the limit of my patience, it is because I have.  I tried the carrot by

resolving the parties' problems in scheduling depositions.  I am now reaching for the stick and I

can only hope that a word to the wise is sufficient.

C.      Defendants' Failure to Move for Enlargements of Time

It is clear from the record that in numerous instances, defendants failed to file timely

responses to plaintiff's discovery requests.  As argued by defendants, "there is an explanation for

CCHPS' alleged delay in responding to discovery involving the departure of CCHPS'

Administrator from the organization on December 15, 2004.  The CCHPS Administrator, Estelle

Hunter, was responsible for responding to all discovery requests, including answering

interrogatories and providing deposition dates, for CCHPS.  Her departure and the process

involved in identifying her successor have resulted in the most recent difficulties in providing the

requested discovery." Defendant's Memorandum of Points and Authorities in Opposition to

Plaintiff's Motion for Sanction ("Defs. Opp.") at 1-2.

What is not clear is why defendants did not simply move for enlargements of time within which to respond.  The fact that the CCHPS Administrator recently left the agency is an appropriate basis for a motion for an enlargement of time–it is not, however, an appropriate excuse for defendants' failure to make such a motion.  That defendants served responses to interrogatories on February 11, 2005 is of no moment since the scheduling order that was in effect at the time of plaintiff's filing of the current motion for sanctions was my Order of January 3, 2004, which stated that defendants must answer all outstanding interrogatories by January 17, 2005.  Plaintiff, therefore, will be awarded reasonable attorneys fees associated with the filing of that portion of its motion devoted to defendant's failure to respond to the interrogatories in a timely manner.

     D.     <u>The Nature of the Relief Sought</u>

Through this motion, plaintiff seeks the ultimate sanction: a default judgment.[1]  Citing <u>Dellums v. Powell</u>, 566 F.2d 231 (D.C. Cir. 1977), plaintiff argues that such relief is warranted if for no other reason than its deterrent effect. Plains. Mot. at 2.  Plaintiff also cites <u>Nat'l Hockey League v. Metro. Hockey Club, Inc.</u>, 427 U.S. 639 (1976) and <u>Weisberg v. Webster</u>, 749 F.2d 864 (D.C. Cir. 1984), as examples of cases which have been dismissed as a result of the parties' failures to comply with discovery obligations. <u>Id.</u>

---

[1] Although plaintiff seeks the ultimate sanction of a default judgment, the lesser sanction of preclusion has also been deemed inappropriate in certain circumstances.  <u>See</u> <u>Bonds v. District of Columbia</u>, 93 F.3d 801, 808-09 (D.C. Cir. 1996) (holding that, after considering "the resulting prejudice to the other party, any prejudice to the judicial system, and the need to deter similar misconduct in the future," in a case of alleged sexual harassment and retaliation, the sanction of precluding defendant from calling any of its fact witnesses effectively rendered defendant without a defense and was therefore inappropriate).  <u>But</u> <u>cf.</u> <u>Flynn v. Thibodeaux Masonry, Inc.</u>, 311 F. Supp. 2d 30, 37 (D.D.C. 2004) (holding that corporate defendant's failure to retain counsel despite the court's "unambiguous warning and order" warranted the entry of a default judgment against it).

These cases are clearly distinguishable from the one at bar.  In <u>Dellums</u>, the issue before the court was whether the trial court abused its discretion when it dismissed certain class action plaintiffs for failing to respond to interrogatories.  The court held that the trial court did not abuse its discretion as to one of the plaintiffs, because that plaintiff received the interrogatories yet failed to answer them.  The court further held that the trial court did abuse its discretion as to two other plaintiffs who apparently never received the interrogatories. <u>Id.</u> at 236.  The bases of the court's decision was two-fold.  First, as to the plaintiff who received the interrogatories yet did not answer them, the court noted that he was well aware of his obligation and simply failed to follow through.  Second, the court stressed the significance of the party's failure to respond to interrogatories in the context of a class action:

> Recognizing that discovery addressed to absentee class members can be "a tactic to take undue advantage of the class members or . . . a strategem to reduce the number of claimants" and further that Rule 23 of the Federal Rules contemplates that absentee parties shall remain the passive beneficiaries of class suits, courts have found it necessary to restrict availability of discovery against absentees to those instances in which a need can be shown.  This restriction creates a concomitant obligation on the part of representative plaintiffs to cooperate fully with discovery.  Failure of a representative plaintiff to respond to discovery or to keep class counsel informed of his whereabouts is a serious matter which ought to be discouraged by appropriate sanctions.

<u>Id.</u> at 236.  <u>See also</u> <u>Work v. Bier</u>, 107 F.R.D. 789, 791 (D.D.C. 1985) (citing <u>Dellums</u> and noting that where there is no clear evidence of bad faith, the entry of a default judgment for a discovery abuse is unwarranted).

In <u>National Hockey</u>, the Supreme Court reversed the appellate court and upheld the trial court's dismissal of an action based on the extenuating circumstances surrounding plaintiff's failure to file timely answers to interrogatories.  Unlike the behavior at issue in the case at bar, in

10

National Hockey, the Court concluded that the trial court acted appropriately by dismissing the

case in light of plaintiffs' "'flagrant bad faith' and their counsel's 'callous disregard' of their

responsibilities." Id. at 643.  In support of its decision, the Court even quoted the trial court's

description of the behavior:

> The District Court, in its memorandum opinion directing that
> respondents' complaint be dismissed, summarized the factual
> history of the discovery proceeding in these words:
>
>> After seventeen months where crucial
>> interrogatories remained substantially unanswered
>> despite numerous extensions granted at the eleventh
>> hour and, in many instances, beyond the eleventh
>> hour, and notwithstanding several admonitions by
>> the Court and promises and commitments by the
>> plaintiffs, the Court must and does conclude that the
>> conduct of the plaintiffs demonstrates the callous
>> disregard of responsibilities counsel owe to the
>> Court and to their opponents.  The practices of the
>> plaintiffs exemplify flagrant bad faith when after
>> being expressly directed to perform an act by a date
>> certain . . . they failed to perform and compounded
>> that noncompliance by waiting until five days
>> afterwards before they filed any motions.
>> Moreover, this action was taken in the face of
>> warnings that their failure to provide certain
>> information could result in the imposition of
>> sanctions under Fed. R. Civ. P. 37.  If the sanction
>> of dismissal is not warranted by the circumstances
>> of this case, then the Court can envisage no set of
>> facts whereby that sanction should ever be applied.

Id. at 640-41.

Finally, in Weisberg, the appellate court upheld the trial court's dismissal of the case

based on plaintiff's repeated failure to respond to discovery requests. Weisberg v. Webster, 749

F.2d at 872.  As later noted by the court in Shepherd v. Am. Broad. Cos., 62 F.3d 1469 (D.C. Cir.

1995) and discussed by the court in Webb v. District of Columbia, 189 F.R.D. 180 (D.D.C.

1999), the key to the court's holding in <u>Weisberg</u> was "'plaintiff's willful and repeated refusal to comply with an order requiring him to respond to the defendant's discovery requests concerning information that went directly to the merits of the case . . . Moreover, the plaintiff's recalcitrance in <u>Weisberg</u> had entirely halted the discovery process and frustrated the defendant's ability to litigate its case.'" <u>Id.</u> at 189 (citing <u>Shepherd v. Am. Broad. Cos.</u>, 62 F.3d at 1480).  In <u>Webb</u>, the court likened the facts in the case before it to those in <u>Weisberg</u>: "Again, the case currently before the Court closely resembles the Court of Appeals' portrayal of the appropriate dismissal in <u>Weisberg</u>.  The pervasive combination of illegal document destruction and unreasonably reticent discovery practice in this litigation effectively prevented the plaintiff from litigating his case.  Furthermore, it precipitated an unacceptable circumstance in which the plaintiff was forced to either seek substantial last-minute discovery and forego meaningful preparation for trial or proceed to trial without critical evidence." <u>Webb v. District of Columbia</u>, 189 F.R.D. at 189.

In <u>Webb</u>, the court also reiterated the standard, articulated in <u>Shea v. Donohoe Constr. Co.</u>, 795 F.2d 1071 (D.C. Cir. 1986), for the imposition of a default judgment as a sanction for misconduct: 1) whether the opposing party's ability to present its case has been so severely prejudiced that it would be unfair to require him to proceed, 2) whether the burden placed on the court is intolerable, and 3) whether there is a sufficient need to deter similar conduct in the future. <u>Webb v. District of Columbia</u>, 189 F.R.D. at 189.

In the case at bar, plaintiff's ability to proceed has not been so severely prejudiced by defendants' actions.  In fact, although plaintiff filed the instant motion on Feb. 3, 2005, on April 1, 2005, Judge Kessler extended the discovery deadline to July 1, 2005 with dispositive motions due August 1, 2005.  Therefore, the delay plaintiff encountered in getting answers to the

interrogatories has not prejudiced him.  Second, the burden placed on the court in having to

resolve that portion of the motion dealing with the interrogatories, while avoidable, does not rise

to the level of being intolerable.  Third, the court expects that the sanction it is imposing, having

to pay attorneys fees, will act as a sufficient deterrent against similar behavior in the future.

Thus, while the behavior exhibited by defendants in the case at bar was inappropriate, it hardly

rises to the level of that described by the courts in <u>National Hockey</u>, <u>Weisberg</u>, and <u>Webb</u>.

**CONCLUSION**

An Order accompanies this Memorandum Opinion.


_____

JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE


Date: